UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MUSA NANGLE,

     Plaintiff,

v.                             Case No: 8:23-cv-00882-KKM-SPF

BAY AREA SITE WORKS LLC, and
ROBERT A. ZAMBITO,

     Defendants.

_____

## ORDER

Plaintiff Musa Nangle worked as a tree trimmer for Bay Area Site Works, LLC (BASW), and its owner, Robert Zambito. He now sues them for wages allegedly due under the Fair Labor Standards Act's (FLSA) minimum wage and overtime provisions. *See* 29 U.S.C §§ 206, 207. The defendants counterclaim for breach of contract, alleging that Nangle caused a company truck's tire to blow out by failing to perform a pre-trip inspection. Nangle moves for summary judgment on his FLSA claims, and the defendants move for summary judgment on both the FLSA claims and their counterclaim. Because no record evidence shows that Nangle was covered by the FLSA during the relevant time, I deny his motion and grant the defendants' motion in part. But because I must allow Nangle to withdraw two admissions, leaving a genuine issue of material fact as to whether he

performed a pre-trip inspection, I deny the defendants' motion for summary judgment as to their counterclaim.

## I.   BACKGROUND

Many of the relevant facts in this case are undisputed. Defendant BASW, owned by Defendant Zambito, "is a tree removal, tree trimming, stump grinding and removal services company for residential and commercial properties in Tampa and across Florida, located in Hillsborough County, Florida." Joint Statement of Undisputed Facts (Doc. 55) ¶¶ 1–2. Plaintiff Musa[1] Nangle worked for BASW for between seven and ten months in 2022 and early 2023, driving a truck and trimming trees. (Doc. 53-1) at 11; (Doc. 53-2); (Doc. 54-5) at 6. For his labor, Nangle was paid a flat rate of $150 per day. (Doc. 53-1) at 18–19; (Doc. 54-5) at 4. Nangle's work arrangement with BASW was informal, and Nangle never received a Form 1099 or a Form W-2. *See* (Doc. 54-5) at 7.

That arrangement ended in January 2023. While Nangle was doing a job for a friend of Zambito's using a BASW truck on January 19, one of the truck's tires blew out. (Doc. 53-1) at 21–22; (Doc. 54-5) at 12. Nangle took the truck to an auto shop in Port Charlotte, Florida. (Doc. 54-5) at 12. While there, Nangle was involved in an altercation with a shop employee. (Doc. 54-5) at 12. The police were called, and they arrested Nangle on an outstanding warrant. (Doc. 54-5) at 11. As a result, Zambito learned of Nangle's extensive

---

[1] Nangle also sometimes goes by "Moses," the Greek version of his name. (Doc. 54-5) at 8.

criminal history and told Nangle that he could no longer work for BASW. (Doc. 54-5) at 66.

After that, Nangle sued BASW and Zambito under the FLSA for failing to pay him overtime (Count I) and for failing to pay him the federal minimum wage (Count II). Am Compl. (Doc. 11) ¶¶ 50–67. The defendants counterclaimed, alleging that Nangle breached an oral contract requiring him to perform a pre-trip inspection of the tires on the truck Nangle drove to Port Charlotte on January 19, leading to the blow out. Counterclaim (Doc. 29) ¶¶ 11–18.

During discovery, Nangle failed to respond to a request for admissions served by the defendants. Def.'s Mot. to Deem Request for Admissions Admitted (Doc. 43) at 1. Relevant to the defendants' counterclaim, the request asked Nangle to admit or deny that he "did not conduct a pre-trip inspection of the vehicle [he was] operating for" BASW on January 19, 2023, and that Nangle "caused damage to the vehicle." Def.'s 1st Request for Admissions (Doc. 43-1) at 2. The defendants moved this Court to deem the statements admitted, but that motion was denied because "Rule 36 'requires neither further action by the requesting party or court intervention; instead, matters properly requested to be admitted are automatically deemed admitted.'" (Doc. 45) (quoting *Green v. Costco Wholesale Corp.*, No. 8:17-cv-1428-T-27AAS, 2018 WL 1899031, at *1 (M.D. Fla. Apr. 20, 2018)).

3

Now, both parties move for summary judgment on Nangle's claims. The defendants alone move for summary judgment on their counterclaim.

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020).

## III.   ANALYSIS

The defendants are entitled to summary judgment on Nangle's FLSA claims because the record contains no evidence showing that the FLSA governed Nangle's employment with BASW. But because Nangle must be allowed to withdraw those admissions relevant to the defendants' counterclaim and the record evidence conflicts as to whether Nangle performed a pre-trip inspection, they are not entitled to summary judgment as to their counterclaim.

### A. The Record Evidence Does Not Show That the FLSA Applied to Nangle Via Either Individual or Enterprise Coverage

Not all employees qualify for the FLSA's protections. To be covered by the FLSA, an employee must either be "engaged in commerce or in the production of goods for commerce" or be employed by an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206, 207; *see also McLeod v. Threlkeld*, 319 U.S. 491, 493 (1943) ("In the [FLSA], Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority." (citation omitted)). The former category is known as "individual coverage," while the latter is called "enterprise coverage*." See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (per curiam). The defendants argue that no evidence in the record shows that Nangle falls within either category. *See* Def.'s Mot. for Summ. J. (Doc. 54) at 10–14 (Def.'s MSJ).

To be individually covered under the FLSA, an employee must be "*directly* and *regularly* 'engaged in' interstate commerce." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006)). An employee is engaged in commerce if he is "directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Id.* at 1315–16 (emphasis omitted) (quoting *Thorne*, 448 F.3d at 1266). "[I]ndirect or sporadic involvement in commerce is insufficient." *Id.* at 1315.

Nangle is not covered individually under the FLSA. The parties do not identify any evidence showing that Nangle directly or regularly engaged in interstate commerce during his work with BASW. Nangle's own Motion for Partial Summary Judgment (Doc. 53) is entirely devoid of arguments that the FLSA covers him. In his Response to the defendants' motion, Nangle claims (without citation) that he "regularly and routinely traveled along interstate highways and byways in the performance of his job duties." Pl.'s Resp. in Opp. to Def.'s Mot. For Summ. J. (Doc. 57) at 6 (Pl.'s Resp.). Even if that were true, Nangle does not claim he ever crossed state lines on BASW business. *See id.*; *see also* (Doc. 54-2)

at 2 ("While performing services for BASW, Mr. Nangle never traveled outside of Florida."). Mere intrastate travel along the arteries of interstate commerce is insufficient to bring Nangle within the FLSA's ambit. *See Josendis*, 662 F.3d at 1316 ("Because Josendis did not travel across state lines as part of his work for Wall to Wall, he cannot claim individual coverage based on any of the travel he completed.").

Nangle also points to Zambito's testimony that BASW was engaged in "site work" as evidence that Nangle "repair[ed] and maintain[ed] roads that were used for utilities and travel." Pl.'s Resp. at 6; *see* (Doc. 53-1) at 6–7 (explaining that BASW does "site work" and describing that work as including the "[g]rading of roads," the "removal of driveways," and putting in "[n]ew access roads for utility companies so they can get to their sites"). But Nangle never points to any evidence that *he* engaged in such work for BASW. *Cf.* (Doc. 53-1 at 12) ("[Nangle's Counsel]: What did you bring [Nangle] on to do? [Zambito]: Just tree trim and . . . remove trees and drive the equipment."); (Doc. 54-5) at 6 ("My job was to get out in that hot sun and pick those logs up, cut tree limbs, Bobcat. Any and everything. We had to rake leaves all day, rake the leaves up and bag them and any and everything that involved landscaping and tree service."). That evidence might be relevant to a claim of enterprise coverage, but it cannot establish individual coverage.

Yet the evidence does not show that BASW is a covered enterprise, either. To establish enterprise coverage, a FLSA plaintiff must show that his employer "1) 'has

7

employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' and 2) has at least $500,000 of 'annual gross volume of sales made or business done.' " *Polycarpe*, 616 F.3d at 1220 (quoting 29 U.S.C. § 203(s)(1)(A)); *see also Burgos v. Emperor's Tampa, Inc.*, 713 F. Supp. 3d 1246, 1253 (M.D. Fla. 2024) ("Whether the FLSA applies to a business during a given year depends on how much that business makes *during that year*." (emphasis in the original)). Even if he could satisfy the first prong, Nangle has offered no evidence of BASW's annual business during the years that he worked there. He thus cannot avail himself of enterprise coverage.

Because no evidence shows that the FLSA applies to Nangle's work at BASW, the defendants' summary judgment motion is granted as to both Counts I and II of Nangle's Amended Complaint, and Nangle's partial summary judgment motion is denied.

### B. A Genuine Issue of Material Fact Exists as to Whether Nangle Performed a Pre-Trip Inspection

The defendants move for summary judgment on their breach of contract counterclaim based on Nangle's failure to timely answer several requests for admission. *See* Def.'s MSJ at 18–19; FED. R. CIV. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its

attorney."). On the defendants' view, Nangle's admissions resolve the issues of breach and damages, and they say that no dispute exists that the parties had at least an independent-contractor agreement requiring Nangle to perform a pre-trip inspection. Def.'s MSJ at 18–19. Nangle asks this Court to excuse his failure to timely object to the defendants' requests. Pl.'s Resp. at 10–11.

I construe Nangle's request as a motion to withdraw his admissions. *Cf. Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 686 (M.D. Fla. 2005). A two-part test governs such motions. "First, the court should consider whether the withdrawal will subserve the presentation of the merits, and second, it must determine whether the withdrawal will prejudice the party who obtained the admissions in its presentation of the case." *Perez v. Miami-Dade County*, 297 F.3d 1255, 1264 (11th Cir. 2002); FED. R. CIV. P. 36(b); *see also Perez*, 297 F.3d at 1265 ("[A] district court abuses its discretion under Rule 36(b) in denying a motion to withdraw or amend admissions when it applies some other criterion beyond the two-part test—or grossly misapplies the two-part test—in making its ruling.").

The defendants identify no prejudice that they would suffer if Nangle is allowed to withdraw his admissions, so withdrawal is permitted. The defendants would need to show that, for example, their reliance on Nangle's admissions has caused them to forego the gathering of relevant evidence that is now unavailable. *See Perez*, 297 F.3d at 1266; *see*

*also id.* ("The prejudice contemplated by the Rule is not simply that the party who initially

obtained the admission will now have to convince the fact finder of its truth." (quoting

*Smith v. First Nat'l Bank of Atlanta*, 837 F.2d 1575, 1578 (11th Cir. 1988)). Despite filing

a reply, the defendants have not pointed to any such prejudice. *See* Def.'s Reply in Supp.

of Mot. for Summ. J. (Doc. 58). Nangle's admissions are thus deemed withdrawn.

In the light of that withdrawal, a genuine dispute of material fact exists as to the

defendants' counterclaim. To prevail on a claim for breach of contract, a counter-plaintiff

must prove "(1) a valid contract; (2) a material breach; and (3) damages." *People's Tr. Ins.*

*Co. v. Alonzo-Pombo*, 307 So. 3d 840, 843 (Fla. 3d DCA 2020). The record reflects that

Nangle and Zambito understood it to be Nangle's responsibility as part of his work to check

BASW's truck before driving it. *See* (Doc. 53-1) at 16 ("[Nangle's Counsel]: Is there a

company policy on inspecting the vehicle before driving it? [Zambito]: Just a safety check,

general safety check, make sure everything looks right, chains are on the equipment

attached to the vehicle, tires are aired up, oil is checked things like that. . . . [Nangle's

Counsel]: Is that something that . . . was explained to Mr. Nangle? [Zambito]: Yes."];

(Doc. 54-5) at 4 ("I always had to do these extra duties. Check the truck, things of that

nature."). But the record is divided as to whether Nangle performed this duty the day that

the tire blew out (as well as the blowout's exact cause). *Compare* (Doc. 53-1) at 21

("[Nangle's Counsel]: Why was it [Nangle's] fault [that the tire blew out] in your opinion?

[Zambito]: He didn't check the air on the tires before he took off."), *with* (Doc. 54-5) at 12 ("[P]rior to me [Nangle] leaving the yard and days prior to this happening, I let [Zambito] know . . . that the truck needed a tire. The tire was bald on the truck."). Summary judgment is thus denied as to the defendants' counterclaim.

## IV.   CONCLUSION

Defendants are entitled to summary judgment as to Plaintiff's FLSA claims but not as to their counterclaim. Accordingly, the following is **ORDERED:**

1.   Plaintiff's Motion for Partial Summary Judgment (Doc. 53) is **DENIED**.

2.   Defendants' Motion for Summary Judgment (Doc. 54) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**ORDERED** in Tampa, Florida, on October 29, 2024.

Kathryn Kimball Mizelle
United States District Judge